

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:RWN/SMS
F. #2025R00028

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 15, 2025

<u>By ECF</u>

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Lori Zeno
     <u>Criminal Docket No. 25-182 (RPK)</u>

Dear Judge Kovner:

  The government respectfully submits this letter in response to the submissions of Pretrial Services ("Pretrial") and the defendant regarding two of the government's proposed modifications of the defendant's conditions of release.[1]

  Neither the defendant nor Pretrial has disputed that while on pretrial release, the defendant violated her conditions of release and committed a new crime by attempting to steal additional money from the Organization.[2] The only reason the defendant was not successful— and the only reason the government became aware of the new criminal conduct—was because a savvy employee of the Vendor recognized that the defendant should not personally receive a refund for a corporate purchase by the Organization. Contrary to the characterization of Pretrial (quoted by the defendant), this was no mere "misjudgment." This was a crime. And contrary to the position of Pretrial (adopted by the defendant), if the defendant's bail conditions are not going to be revoked, they must be substantially increased to assure the safety of the community.

  Under Title 18, United States Code, Section 3148(a), a defendant who has violated conditions of release is subject to "revocation of release, an order of detention, and a prosecution for contempt of court." Should the government move for the defendant's revocation, pursuant to Section 3148(b), where, as here, there is probable cause to believe that the defendant

---

[1] On October 9, 2025, the Court ordered the defendant's bail conditions modified to include condition (2) below, that she may not contact any vendor about any purchase made on behalf of the Organization. This letter addresses therefore only conditions (1) and (3), detailed below.

[2] Capitalized terms in this letter refer to those terms previously defined in the government's opening letter motion to modify the defendant's conditions of release, ECF No. 25.

violated the condition that she "not commit a Federal, State, or local crime while on release," there is a "rebuttable presumption . . . that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." The prospect of further economic crimes such as the defendant's ongoing efforts to steal from the Organization are a danger to the community for purposes of the Bail Reform Act, 18 U.S.C. § 3142. See, e.g., United States v. Madoff, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) (collecting cases).[3]

       The government has not yet sought to revoke the defendant's bail conditions, though it reserves the right to do so. Rather, the government instead proposed several modifications in order to attempt to satisfy the Bail Reform Act's dual mandate to impose the least restrictive conditions while also assuring the safety of the community and the defendant's appearance. Those proposed conditions were tailored to prevent further crimes such as the criminal offense the defendant committed while on pretrial release:

1. The defendant be placed on standalone electronic monitoring;

2. The defendant may not contact any vendor about any purchase made on behalf of the Organization; and

3. The defendant be subject to cyber monitoring of her electronic devices to ensure compliance with the conditions of pretrial release.

As noted in the government's prior letter, before filing, the government conferred with the defendant's Pretrial Officer, who advised the government that Pretrial would join the government's request for modifications (1) and (2) above but opposed modification (3).

       To the government's surprise, Pretrial indicated in its letter to the Court that, contrary to its prior discussions with the government, it opposed standalone electronic monitoring as well. And frankly to the government's shock, Pretrial noted that it opposed both cyber monitoring and standalone electronic monitoring in part because the conditions would, in Pretrial's view, not have "prevent[ed] the alleged conduct by the defendant." See Pretrial Letter at 1. In other words, after the government advised Pretrial that the defendant had (a) committed new crimes and (b) lied to Pretrial about her conduct, Pretrial took the position that because the government's proposed conditions were not stringent enough to prevent the defendant from engaging in additional crimes going forward, they should not be imposed. And yet, Pretrial did not recommend that even more stringent conditions, or even revocation of the bond, be imposed to ensure the safety of the community. Instead, Pretrial perplexingly took the position in its letter to the Court that "increasing the monetary and asset value of the bond"—a condition that is wholly unrelated to the defendant's new criminal conduct regarding a bond that is now already

---

[3] Furthermore, the defendant is also subject to enhanced penalties should the government pursue a prosecution of the defendant for the new crime she has committed while on pretrial release. See 18 U.S.C. § 3147.

2

forfeitable due to the defendant's new crimes—as well as "reminding" the defendant not to commit crimes, were the appropriate remedies here.

The government sought clarification from Pretrial Services during a subsequent phone call on or about October 8, 2025. During that call, the defendant's Pretrial Services Officer conveyed to the government that Pretrial would continue to oppose standalone electronic monitoring and cyber monitoring because there were other ways to manage the defendant's dishonesty and because the defendant could try to circumvent cyber monitoring by using unauthorized devices. Again, the government finds it difficult to understand why the prospect that the defendant could find a way to cheat the conditions of her release would counsel in favor of less stringent conditions than those that the government proposed.

Pretrial also advised the government that it does not believe that the defendant's attempted theft from the Organization or the potential for similar crimes in the future represents a "danger" to the community under the Bail Reform Act because it does not involve violence such as a firearm or other weapon. To the contrary, the law is well-established that the potential for a defendant to engage in further financial harm through fraud and theft offenses constitutes a "danger" to the community for purposes of the Bail Reform Act. See United States v. LaFontaine, 210 F.3d 125, 134 (2d Cir. 2000) ("[A] record of violence or dangerousness in that sense is not necessary to support pretrial detention."); see also United States v. Barrett, No. 15-CR-103 (KAM) (E.D.N.Y. 2016), ECF No. 94 (revoking bond after defendant committed wire fraud while on pretrial release thus posing "financial/economic harm to health care programs"). This is no less the case when the fraud is committed against the same victim as the underlying charge. See United States v. Dupree, 833 F.Supp.2d 241, 247 (KAM) (E.D.N.Y. 2011) (where defendant committed further bank fraud against victim while on pretrial release, "[h]is continued detention is warranted to protect [the victim] from yet another fraudulent scheme"). To the extent that Pretrial's recommendation is based on their mistaken view that continued financial crimes do not constitute a danger to the community under Section 3142, that view is wrong and should not be adopted by the Court.

The government understands that cyber monitoring imposes a substantial burden on Pretrial's resources. But to claim, as Pretrial does here, that monitoring the defendant's electronic devices will not mitigate any risk of danger to the community, when the defendant has already used electronic devices to attempt an additional theft against the Organization, is simply not true.

3

        The government will be prepared to discuss these and any other additional conditions that may be necessary to ensure Zeno's compliance with the terms of her pretrial release at the upcoming status conference, scheduled for October 20, 2025.

                                    Respectfully submitted,

                                    JOSEPH NOCELLA, JR.
                                  United States Attorney

                By:    /s/ Sean M. Sherman
                        Russell Noble
                        Sean M. Sherman
                        Assistant U.S. Attorneys
                        (718) 254-6178/6262

cc:    Clerk of Court (by ECF)
       Counsel of Record (by ECF)