# Exhibit A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    : 25-CR-102(RPK)

      -against-           : United States Courthouse
                       : Brooklyn, New York

LORI ZENO,               : Tuesday, February 2026
                       : 9:30 a.m.
        Defendant.     :

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES CHIEF MAGISTRATE JUDGE

A P P E A R A N C E S:

For the Government: UNITED STATES ATTORNEY'S OFFICE
                  Eastern District of New York
                  271 Cadman Plaza East
                  Brooklyn, New York 11201
            BY:  RUSSELL NOBLE
                  Assistant United States Attorney

For the Defendant:   STEVEN ZACHARY LEGON, ATTORNEY AT LAW
                  20 Vesey Street - Suite 400
                  New York, New York 10007

Court Reporter:      Linda A. Marino, Official Court Reporter
                  225 Cadman Plaza East/Brooklyn, NY 11201
                  lindacsr@aol.com

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

Proceedings                                          2

THE COURTROOM DEPUTY:  This is a criminal cause for a continued change of plea in USA v. Zeno, et al., Docket No. 25-CR-182.

Counsel, could you please state your name for the record, beginning with the Government?

MR. NOBLE:  Assistant U.S. States Attorney Russell Noble and paralegal specialist Daniel Arakawa for the Government.  Good morning, your Honor.

THE COURT:  Good morning.

MR. LEGON:  Good morning, your Honor.  The Office of Attorney Anthony Ricco by Steven Legon for Defendant Lori Zeno.

THE COURT:  That's Ms. Zeno next to you, right?

MR. LEGON:  Yes, Ms. Zeno is seated next to me at the defense table.

THE COURT:  Okay.  You all can have a seat.

So, this is a continued change of plea hearing.  So, we got about halfway through the process last time and something came up on Defendant's side.  So, after Ms. Zeno had opportunity to speak with her attorney, we decided that it would make sense to take a break and reconvene.

So, just so everyone knows, I'm essentially going to start the process over again.  And I'll explain this in a minute again, but I'm assisting the district judge with this process and the district judge will read the transcript from

Linda A. Marino, Official Court Reporter

Proceedings                                    3

today's proceeding.  So, rather than Judge Kovner having to start with one transcript and switch to another that was made several days later, I'm just going to make sure the entire unified process makes sense together in the one document.

But let me ask a couple questions before we get going.

(Court Exhibit 1 so marked.)

THE COURT:  So, I have the plea agreement, which I've marked Court Exhibit 1 with today's date, February 3, 2026.

Let me ask the Government what, if anything, is different from the plea agreement that was the operative document for the last time we started this change of plea hearing?

MR. NOBLE:  There are two differences.

First, the deadline for acceptance of responsibility under the guidelines was updated to today, February 3.

And second, there was an adjustment to the agreed-upon minimum restitution amount in Paragraph 1E.

THE COURT:  And then another point from the conference last time was, Ms. Zeno, for you to have sufficient opportunity to consult with your attorneys about whatever issues you wanted to talk about.

So, since then, have you had a sufficient opportunity to speak with your attorneys about whatever issues

Linda A. Marino, Official Court Reporter

Proceedings                                    4

were of concern to you?

THE DEFENDANT:  Yes, I have.

And I just want to say thank you very much for giving me that time.  I appreciate it and I'm sorry for having to start over.

THE COURT:  Well, we're here, so let's start with the first question to the Government.

Are there any victims of these offenses; and, if so, has the Government informed them of today's hearing and their right to attend and be heard?

MR. NOBLE:  There is a victim -- the organization mentioned in the indictment -- and it has been notified of today's appearance.  I have not been informed of anyone wishing to attend.

THE COURT:  So, let's just quickly go over the paperwork.

As I mentioned, we have the plea agreement marked as Court Exhibit 1 but with today's date.  To be clear, this is now the operative document that we'll be reviewing, not the one that was marked as Court Exhibit 1 and returned to the Government but which has the date of the previous hearing.

There's the superseding indictment, which is dated December 15, 2025, as the date it was filed with the Clerk's Office.

The elements sheet that was prepared by the

Linda A. Marino, Official Court Reporter

Proceedings                                          5

Government, that's still the page that was dated January 6, 2026.

And we have a newly signed and dated with today's date consent to have plea taken before a magistrate judge. There was also one of these forms executed for the last conference and filed on the docket.  It's exactly the same page, just with different signatures and date.

So, for both counsel, have you seen these documents?

And to the extent you need a copy, do you have one?

MR. NOBLE:  Yes, your Honor.

MR. LEGON:  Yes, your Honor.

THE COURT:  All right.  So, we're proceeding here with a change of plea hearing.  And what I've been informed of based on the papers that I just went over is that it's Ms. Zeno's plan to plead guilty to Count One of the superseding indictment, which charges her with a violation of federal law, 18 United States Code, Section 1349, and that is wire fraud conspiracy, which starts on Page 7 of the superseding indictment.

So, defense counsel, is that right, our plan here today?

MR. LEGON:  Yes, that is correct, your Honor.

THE COURT:  Ms. Zeno, this is a serious decision, and my role here is to make sure that you understand all of your rights and the consequences of the proposed guilty plea.

Linda A. Marino, Official Court Reporter

Proceedings                                 6

As we go along, I'm going to provide you with information.

I'm also going to ask you some questions and I would like you to answer those questions under oath.  So, I'm going to ask my deputy, who you've already met, Ms. Heath, to administer an oath to you.

THE COURTROOM DEPUTY:  Would you please state your name for the record?

THE DEFENDANT:  Lori Zeno.

THE COURT:  Do you swear or affirm that the information you are about to provide to the Court is the truth, the whole truth, and nothing but the truth?

THE DEFENDANT:  Yes.

THE COURT:  I'll just note for the record Ms. Zeno raised her hand while she took the oath.

Ms. Zeno, do you understand that having just taken the oath, your answers to my questions will be subject to the penalties of perjury or of making a false statement if you don't answer the questions truthfully?

THE DEFENDANT:  Yes, I do.

THE COURT:  If you do answer any of my questions falsely, the Government could decide to prosecute you for the crime of perjury or of making a false statement and in that prosecution use any of the false statements that were made today.

Do you understand?

Linda A. Marino, Official Court Reporter

Proceedings                               7

THE DEFENDANT:  Yes.

THE COURT:  So, as I mentioned a few minutes ago, this case is assigned to a district judge, Judge Kovner. She's the judge who will make the decision as to whether to accept your guilty plea and, if she does, to sentence you.  If you'd like, you have the absolute right to have this change of plea hearing conducted by Judge Kovner.  If you want to do that, there will be no prejudice to you.  But you can, if you'd like, proceed before me.

As I mentioned, I'm a magistrate judge.  The process here, as you see, we have a court reporter here.  She's taking down everything that's being said.  At at end of the proceeding, she'll prepare a transcript.  And the transcript is a written document that has everything that's been said here.  It will be provided to Judge Kovner.  She'll read it in connection with deciding whether to accept your plea and, if she does, your sentence.

Do you understand the process?

THE DEFENDANT:  Yes.

THE COURT:  Would you like to give up your right to proceed before Judge Kovner for the change of plea hearing and instead agree to proceed before me?

THE DEFENDANT:  Yes, I do.

THE COURT:  And did you have a sufficient and fair opportunity to discuss this decision with your attorney?

Linda A. Marino, Official Court Reporter

Proceedings                                              8

THE DEFENDANT:  Yes.

THE COURT:  And did you discuss it with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  And are you making this decision to proceed before me voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone made any threats or promises to you to have you agree to proceed before me?

THE DEFENDANT:  No.

THE COURT:  So, in order for me to recommend to the district judge that she accept your plea and for her to accept your plea, I have to ask you a number of questions.  So, if you don't understand my questions, please let me know, and I'll reword them.  For the record again, if you could state your full name.

THE DEFENDANT:  Yes, Lori Zeno.

THE COURT:  And how old are you?

THE DEFENDANT:  I'm 65.

THE COURT:  And what's the highest level of education that you've achieved?

THE DEFENDANT:  A juris doctorate.

THE COURT:  And when did you receive your J.D.?

THE DEFENDANT:  In 1986.

THE COURT:  And since then, have you had any formal

Linda A. Marino, Official Court Reporter

Proceedings                                    9

education?

THE DEFENDANT:  No.

THE COURT:  Are you presently or have you recently been under the care of a medical doctor?

THE DEFENDANT:  Yes.

THE COURT:  And for what conditions?

THE DEFENDANT:  I have some heart-related issues; high blood pressure, high cholesterol, I've had two stents put in.

And I'm also suffering from -- I had thyroid cancer, so I have to take medication because my thyroid was removed.

And I suffer from depression, anxiety, and bipolar disorder.

THE COURT:  All right.  So, sort of two areas of interest, your physical health and your mental health, which obviously can be intertwined but let's go through them.

So, the general question that I'll ask or the information that I need is what are the underlying conditions -- you've touched on some of them -- in the relatively recent time, say last couple of months or so, what's the most recent treatments that you've had for these various conditions, what medications are you taking, and have you taken them recently and on schedule?

And also, are you experiencing now any of the effects of these conditions?

Linda A. Marino, Official Court Reporter

Proceedings                                    10

So I'll walk you through them, but that's basically the information that I need about the conditions.

So, is there an underlying diagnosis related to the heart issues?

You said high blood pressure, high cholesterol.

THE DEFENDANT:  Yes.

And then I had some blockages, so they put two stents in.  So, now I see a cardiologist once every three months.

THE COURT:  For the high cholesterol, do you take any medications?

THE DEFENDANT:  Yes, I do.

THE COURT:  What medication do you take?

THE DEFENDANT:  I take -- from my cardiologist, I take a clopidogrel, I take olmesartan, pentoxifylline, and I take eztimibe and atorvastatin.

THE COURT:  So, that's a mix of medications for different conditions; is that right?

THE DEFENDANT:  Yes, all cardiac conditions.

THE COURT:  And is there any particular stent-related treatment or just future preventive care, which is what I think --

THE DEFENDANT:  I have to take -- there's two blood thinners that are among those that I just said and I think is for the stents, and then the other is for the high cholesterol

Linda A. Marino, Official Court Reporter

Proceedings                                    11

and high blood pressure.

THE COURT:  And how often do you see the cardiologist, every three months?

THE DEFENDANT:  Yes.

THE COURT:  When was your last appointment?

THE DEFENDANT:  I just saw him about three weeks ago.

THE COURT:  Is there any outstanding care that you need other than what you just mentioned with regard to the medications?

THE DEFENDANT:  No.

THE COURT:  And are you experiencing any symptoms related to these conditions that would interfere with your ability to understand today's proceedings?

THE DEFENDANT:  No.

THE COURT:  You said you had had thyroid cancer.

Do you know what the medicine is that you take for that?

THE DEFENDANT:  Yes, that's levothyroxine and vitamin D.

And I should have said aspirin that I take also for the cardiac.  I forgot that one.

THE COURT:  The aspirin is the blood thinner; is that right?

THE DEFENDANT:  Yes.

Proceedings                                        12

THE COURT:  I'm not sure how to pronounce it, but the thyroid-related medications, those are thyroid hormone replacements; is that what it is?

THE DEFENDANT:  Yes.

THE COURT:  Are you experiencing any thyroid-related symptoms at the moment?

THE DEFENDANT:  No.

THE COURT:  And what doctor -- what kind of a doctor do you see related to your thyroid?

THE DEFENDANT:  An endocrinologist.

THE COURT:  When was your last appointment with the endocrinologist?

THE DEFENDANT:  Actually, I guess it was -- I can't remember exactly, but I would say at least six months ago.

I see her once a year now.

THE COURT:  For all the medicines that you've mentioned so far, do you take them daily?

THE DEFENDANT:  Yes.

THE COURT:  Did you take today's dosage?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Then you said you have -- you suffer depression, anxiety, and bipolar disorder.

Do you see a physician or a healthcare professional in connection with those conditions?

THE DEFENDANT:  Yes.

Linda A. Marino, Official Court Reporter

Proceedings                                          13

THE COURT:  What kind of medical professional do you work with on those conditions?

THE DEFENDANT:  I see both a psychiatrist and nurse practitioner.  I see the psychiatrist usually once every three months and I see the nurse practitioner once a month.  And I also see an individual therapist and I attend two groups a week.

And I'm also a recovering alcoholic and I attend Alcoholics Anonymous meetings every day.

THE COURT:  So, with regard to the psychiatrist, when is the last time you saw the psychiatrist, approximately?

THE DEFENDANT:  I would say about maybe six weeks ago.

THE COURT:  How about the nurse practitioner, when's the last time you saw that person?

THE DEFENDANT:  Maybe three weeks ago.

THE COURT:  And those two, what's their role in your treatment plan?

THE DEFENDANT:  They prescribe my medication and they do the medication updates and maintenance.

THE COURT:  So, what, if any, medications do you take related to the mental health conditions?

THE DEFENDANT:  I take lurasidone, sertraline, hydroxyzine, and trazodone.

THE COURT:  And how often are you supposed to take

Linda A. Marino, Official Court Reporter

Proceedings                                      14

those medicines?

THE DEFENDANT:  The trazodone, the sertraline, and the lurasidone I take every day, and the hydroxyzine I take as needed for anxiety.

THE COURT:  For the three that you take every day, have you taken today's dose?

THE DEFENDANT:  Yes.

THE COURT:  And then hydroxyzine as needed?

THE DEFENDANT:  As needed.

THE COURT:  Have you taken that today?

THE DEFENDANT:  I did not.

THE COURT:  So, are you experiencing any side effects from any of those medications?

THE DEFENDANT:  No.

THE COURT:  Is there anything about any of those medications that would interfere with your ability to understand today's proceedings?

THE DEFENDANT:  No.

THE COURT:  So, with the therapist, you see that person once a week?

THE DEFENDANT:  Yes.

THE COURT:  When was your last appointment?

THE DEFENDANT:  Wednesday.

THE COURT:  Last week.

THE DEFENDANT:  Last week, I'm sorry, yes.

Linda A. Marino, Official Court Reporter

Proceedings                                          15

THE COURT:  And then the group therapy is twice --

THE DEFENDANT:  Every Monday and Friday.

THE COURT:  Did you go to yesterday's session?

THE DEFENDANT:  I did not.

I was excused by the doctor for a medical issue.

THE COURT:  So, is there anything about missing that session --

THE DEFENDANT:  No.

THE COURT:  -- that would interfere with how you're feeling today?

THE DEFENDANT:  No.

It was related to my eye.

THE COURT:  Do you have eye conditions?

THE DEFENDANT:  I just had cataract surgery.

THE COURT:  When was that?

THE DEFENDANT:  Two weeks ago.

THE COURT:  And was that a follow-up, the visit yesterday?

THE DEFENDANT:  It was a phone call.

THE COURT:  Are you able to see well enough you can read the documents that we're dealing with?

THE DEFENDANT:  Yes, I can.

THE COURT:  And Mondays and what other days?

THE DEFENDANT:  Fridays.

THE COURT:  Did you go to last Friday's meeting or

Linda A. Marino, Official Court Reporter

Proceedings                                        16

group meeting?

          THE DEFENDANT:  I've missed the last three sessions because of my eye condition.

          THE COURT:  Were they all excused absences?

          THE DEFENDANT:  Yes.

          THE COURT:  Okay.  So, and you attend Alcoholics Anonymous meetings; is that right?

          THE DEFENDANT:  Yes.

          THE COURT:  Did you go to a meeting yesterday?

          THE DEFENDANT:  Yes.

          THE COURT:  Is there any other medication that you take?

          THE DEFENDANT:  No.

          THE COURT:  Let me ask the global question:  Is there anything about any of the medications that you take that would interfere with your ability to understand today's proceeding?

          THE DEFENDANT:  No.

          THE COURT:  Do you have any untreated medical conditions?

          THE DEFENDANT:  No.

          THE COURT:  Do you have any other medical conditions?

          THE DEFENDANT:  No.

          THE COURT:  Let me ask a bit of a history question:

                    Linda A. Marino, Official Court Reporter

Proceedings                                    17

Have you ever been hospitalized or treated for drug addiction, alcoholism, mental or emotional problems?

THE DEFENDANT:  Yes.

THE COURT:  Obviously, you mentioned some of the current treatments.  Tell me a bit about your history with any or all of those conditions.

THE DEFENDANT:  In approximately 2003, I was hospitalized for alcohol addiction -- well, alcoholism.  And then I also attended a 28-day in-patient program back then.

And then, unfortunately, I drank again and, so, I was hospitalized again in May of 2025 for mental health and alcoholism issues.

THE COURT:  How long was that hospitalization in May of '25?

THE DEFENDANT:  A month.

THE COURT:  And was there follow-up treatment?

THE DEFENDANT:  Yes, that's all of the therapies that I'm having now.

THE COURT:  All right.  Any other hospitalization for mental health, emotional problems, drug addiction, or alcoholism?

THE DEFENDANT:  No.

THE COURT:  All right.  In the past 24 hours, have you had any alcohol?

THE DEFENDANT:  No.

Linda A. Marino, Official Court Reporter

Proceedings                                    18

THE COURT:  In the past 24 hours, have you taken any narcotic drugs?

THE DEFENDANT:  No.

THE COURT:  And other than the doses that we just spoke about, have you taken any other medicine in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Do you have any other medical condition or mental health condition?

THE DEFENDANT:  No.

THE COURT:  So, the global question:  Are you feeling mentally and physically well enough to go ahead with today's proceeding?

THE DEFENDANT:  Yes.

THE COURT:  Is your mind clear as you sit here today?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand these proceedings?

THE DEFENDANT:  Yes.

THE COURT:  As a defendant in a criminal case, you have the right to be represented by an attorney at every stage of the criminal case beginning with your arrest through trial and appeal.  If you can't afford an attorney, the Court will appoint an attorney to represent you.

Do you understand?

Linda A. Marino, Official Court Reporter

Proceedings                                    19

THE DEFENDANT:  Yes.

THE COURT:  Counsel, are you appointed or retained?

MR. LEGON:  We are retained, your Honor.

THE COURT:  When you say "we"?

I know there are two attorneys working on this.

MR. LEGON:  So, attorney Anthony Ricco is retained and I am of counsel to Mr. Ricco in this matter.

THE COURT:  All right.  And for Ms. Zeno, are you okay with moving ahead with your attorney who is here today?

THE DEFENDANT:  Yes.

THE COURT:  If at any time you need to speak with your attorney regarding anything, just let me know, and I'll let you do so.  As you know, we did that the last time.  It's fine if we need to take another break --

THE DEFENDANT:  Thank you.

THE COURT:  -- to make sure you understand and are comfortable proceeding.

THE DEFENDANT:  Thank you.

THE COURT:  Have you had any difficulty communicating with your attorneys?

THE DEFENDANT:  No.

THE COURT:  Counsel, have you had any difficulty communicating with your client?

MR. LEGON:  No, your Honor.

THE COURT:  Ms. Zeno, have you had enough time and

Linda A. Marino, Official Court Reporter

Proceedings                               20

opportunity to discuss with your attorneys the decision to enter a guilty plea in this case?

THE DEFENDANT:  Yes.

THE COURT:  Are you fully satisfied with the representation and advice your attorneys have provided to you?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, have you discussed this case with your client?

MR. LEGON:  Yes.

THE COURT:  And have you had any difficulty communicating with her at all?

MR. LEGON:  No.

THE COURT:  And are you satisfied that she understands the rights she'll be waiving by pleading guilty?

MR. LEGON:  Yes, your Honor.

THE COURT:  And in your opinion, is she capable of understanding the nature of these proceedings?

MR. LEGON:  Yes, your Honor.

THE COURT:  And do you have any doubt as to her competence to plead at this time?

MR. LEGON:  No, your Honor.

THE COURT:  And have you advised her of the operation of the sentencing guidelines in her case?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And have you advised her of the possible

Linda A. Marino, Official Court Reporter

Proceedings                                            21

statutory penalties?

MR. LEGON:  Yes, your Honor.

THE COURT:  So, now that we've gone over all of the physical and mental health issues and competence questions, I want to go back to a point that I made earlier, which is that I'm conducting this proceeding in order to help the district judge, Judge Kovner, with the process.

I asked you earlier if you were agreeable to proceeding with me, but I want to review.  I have a paper copy of a consent to have a plea take before a magistrate judge.

This is for Ms. Zeno, have you read this form?

THE DEFENDANT:  I have.

THE COURT:  And do you understand it?

THE DEFENDANT:  I do.

THE COURT:  Did you review it with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Did you have a sufficient opportunity to do so?

THE DEFENDANT:  Yes.

THE COURT:  And with regard to the form, do you agree with everything it says including that you agree to proceed before me by waiving your right to proceed before the district judge?

THE DEFENDANT:  I do.

THE COURT:  And are you making this decision

Linda A. Marino, Official Court Reporter

Proceedings                                    22

knowingly and voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  And are you making it of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign the form?

THE DEFENDANT:  Yes, I did.

THE COURT:  Counsel, did you sign?

MR. LEGON:  Yes, I did, your Honor.

THE COURT:  And for the Government, did you sign the form?

MR. NOBLE:  Yes, your Honor.

THE COURT:  Based on what's been said here today, I believe that Ms. Zeno understands her right to proceed before a magistrate judge -- me -- and is knowingly and voluntarily waiving her right to proceed before the district judge.

So, I'll sign the form and we're going to file this on the docket.  It will be along with the other previously filed consent.  Okay.

So, let's turn to the document that's called the superseding indictment.

Ms. Zeno, have you seen this document?

THE DEFENDANT:  Yes, I have.

THE COURT:  Did you read it?

THE DEFENDANT:  Yes, I did.

Linda A. Marino, Official Court Reporter

Proceedings                                          23

THE COURT:  Do you understand it?

THE DEFENDANT:  I do.

THE COURT:  And did you discuss with your attorney what the Government would have to prove beyond a reasonable doubt with regard to the charges against you in order for you to be convicted of those charges?

THE DEFENDANT:  Yes.

THE COURT:  And did you particularly discuss Count One of the indictment, which is the charge to which it's proposed that you're going to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  So, I'm going to ask the Government now to review on the record the elements of the offense to which it's proposed that Ms. Zeno is going to plead guilty, which is Count One, wire fraud conspiracy, in violation of 18 United States Code Section 1349.

MR. NOBLE:  Yes, your Honor.

The elements of wire fraud conspiracy are:  First, that two or more people formed an unlawful agreement to commit the crime of wire fraud, in violation of Title 18 United States Code Section 1343; and second, the Defendant knowingly and intentionally joined the conspiracy.

The elements of wire fraud are:  First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses,

Linda A. Marino, Official Court Reporter

Proceedings                                                    24

representations, or promises; second, the Defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud; and third, in execution of that scheme, the Defendant used or caused the use of interstate or international wires.

THE COURT:  So, I should just note for the record that what Mr. Noble said is stated also in the elements sheet that was provided by the Government, dated January 6, 2026.

For defense counsel, did the Government correctly state the elements of wire fraud conspiracy?

MR. LEGON:  Yes, your Honor.

THE COURT:  And do you believe that Ms. Zeno understands these elements?

MR. LEGON:  Yes, I do, your Honor.

THE COURT:  And Ms. Zeno, did you review with your attorney these elements of wire fraud conspiracy?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand those elements?

THE DEFENDANT:  Yes, I do.

THE COURT:  I'm going to ask the Government to describe the evidence that the Government would offer at trial in order to establish the elements of this offense.

MR. NOBLE:  Yes, your Honor.

At trial, the Government would introduce the

Linda A. Marino, Official Court Reporter

Proceedings                                         25

following, among other evidence:  Bank records and credit card statements showing expenses that the Defendant and her co-defendant Rashad Ruhani charged to the victim organization's credit cards; records from vendors showing that those credit card purchases were, in fact, for the personal benefit of the Defendant and Ruhani, including vacations to Bali and California, an 85-inch smart television, repairs to Ruhani's car, food deliveries, and designer goods from Ralph Lauren, Neiman Marcus, and Louis Vuitton, among others; the organization's internal records showing that the Defendant and Ruhani falsely claimed that credit card purchases were legitimate business expenses; lease documents for a penthouse apartment in Queens; and records of reimbursements by the organization showing that the Defendant and Ruhani sought reimbursement from the organization by submitting versions of the lease and monthly statements that were altered to remove Zeno's name; photographs taken during the execution of a search warrant at that penthouse apartment showing furniture and other items that were purchased with the organization's funds; personnel and time and attendance records showing that the Defendant hired relatives and associates of Ruhani who performed little or no substantive work for the organization; and testimony from witnesses, including employees of the organization.

THE COURT:  Did the Government produce discovery in

Proceedings                                  26

this case?

MR. NOBLE:  Yes, your Honor.

THE COURT:  For defense counsel, did you review the discovery produced by the Government?

MR. LEGON:  Yes, I did, your Honor.

THE COURT:  Did you review it with your client?

MR. LEGON:  Yes, your Honor.

THE COURT:  And did you review the application of the elements to the evidence that was just described by the Government?

MR. LEGON:  Yes, your Honor.

THE COURT:  And do you believe that Ms. Zeno understands the application of the evidence to the elements?

MR. LEGON:  I do, your Honor.

THE COURT:  And Ms. Zeno, do you understand -- well, did you review with your attorney the application of the evidence to the elements of the wire fraud conspiracy claim?

THE DEFENDANT:  Yes.

THE COURT:  And did you have sufficient time and opportunity to review the application of the elements to the evidence described by the Government?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand the application of the elements to the evidence that was just described by the Government?

Proceedings                                          27

THE DEFENDANT:  Yes.

THE COURT:  And did you review the discovery produced by the Government?

THE DEFENDANT:  Yes.

THE COURT:  All right.  We're going to switch gears.  I'm going to go over some of the rights that you have in a criminal proceeding that you'd be giving up if you decide to go ahead with the guilty plea.

So, you have the right to persist in your plea of not guilty.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  So, even if you are guilty, it's your choice what to do in the case.  It's up to you to decide what you'd like to do; it's not your attorney's choice, your family's choice, or anyone else's choice.

You can withdraw your previously entered plea of not guilty and plead guilty, as I'm told you wish to do, or you can choose to go to trial by persisting in your plea of not guilty.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If you decide to persist in the plea of not guilty to the charges in the superseding indictment, you would have the right under the U.S. Constitution and the laws

Linda A. Marino, Official Court Reporter

of the United States to a speedy and public trial by a jury with the assistance of your attorneys on the charges contained in the indictment.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would be presumed innocent.  You wouldn't have to prove your innocence.  Under the American legal system, the Government has the burden to prove beyond a reasonable doubt that a defendant is guilty of the crimes charged.  If at trail the Government failed to meet that burden of proof as to any particular charge, the jury would have the duty to find you not guilty as to that charge.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Sometimes juries have returned verdicts of not guilty even though the jurors believed that the defendant on trial had probably committed the crimes charged. When the jury returns a not guilty verdict, the jurors are not necessarily saying that they believe that the Defendant is innocent; rather, they are saying that they are not convinced beyond a reasonable doubt that the defendant is guilty.

Do you understand the distinction?

THE DEFENDANT:  Yes.

THE COURT:  If you were to go to trial, at that trial witnesses for the Government would have to come to court

Linda A. Marino, Official Court Reporter

Proceedings                                                    29

and testify in your presence.  Your attorney could cross-examine each witness, object to evidence offered by the Government, offer evidence on your behalf, and subpoena or compel witnesses to come to court and testify.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would have the right to testify on your own behalf if you wanted to do so, but you couldn't be forced to testify if you didn't want to do so. Under the Constitution and laws of the United States, no one can be forced to be a witness against herself, and if you decided to go to trial and you didn't testify the district judge would instruct the jurors that they could not hold that fact against you.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If instead of going to trial you plead guilty to the crime charged, meaning Count One, which is what's proposed by the plea agreement, and if the district judge accepts your guilty plea, you'll be giving up your constitutional right to a trial and all of the other rights that I've just described.  There won't be a trial in your case; instead, the district judge will enter a judgment of guilty based upon your plea.

Do you understand?

Linda A. Marino, Official Court Reporter

Proceedings                                           30

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty, I'm going to have to ask you questions about what you did in order to satisfy myself and, in turn, the district judge that you are guilty of the crime charged.  You're going to have to answer my questions and acknowledge your guilt, and in doing so, you'll be giving up your right not to testify against yourself.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If you enter a guilty plea and admit the criminal conduct alleged in Charge One of the superseding indictment and the district judge accepts your plea, you won't be able to appeal to the appellate court the question of whether you committed the crime or not.  That will be resolved by your plea.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Are you willing to give up your right to a trial and the other rights I've just described?

THE DEFENDANT:  Yes.

THE COURT:  So, let's turn to the plea agreement. As I said earlier, this is marked as Court Exhibit 1 but it's got today's date, February 3, 2026, on it.

So, Ms. Zeno, have you read this entire document?

THE DEFENDANT:  Yes, I have.

Linda A. Marino, Official Court Reporter

Proceedings                                             31

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes, I do.

THE COURT:  Did you have a sufficient opportunity to review it with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  And did you review it with them?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand everything in the document?

THE DEFENDANT:  Yes, I do.

THE COURT:  I'm going to turn to the last page of the agreement.  About two-thirds of the way down, it says:  I have read the entire agreement and discussed it with my attorney.  I understand all of its terms and am entering into it knowingly and voluntarily.

Are those correct statements?

THE DEFENDANT:  Yes.

THE COURT:  And right below that, it has a signature.

Is that your signature?

THE DEFENDANT:  Yes.

THE COURT:  And then below that, it says "approved by."

Mr. Legon, is that your signature there?

MR. LEGON:  Yes, it is, your Honor.

Linda A. Marino, Official Court Reporter

Proceedings                                     32

THE COURT:  For the Government, Mr. Noble, is that your signature on this?

MR. NOBLE:  Yes, your Honor.

THE COURT:  Then below that, it says approved by Supervising Assistant U.S. Attorney.

Whose signature is that?

MR. NOBLE:  Turner Buford.

THE COURT:  And what was Mr. Buford's role in this case?

MR. NOBLE:  He's my supervisor.  He approved the plea agreement.

THE COURT:  I'll also note for the record that this document is dated February 3, 2026.

Does the Government represent that this plea agreement, Court Exhibit 1, contains the entirety of any understanding that the U.S. Attorney's Office has reached with Ms. Zeno?

MR. NOBLE:  Yes, your Honor.

THE COURT:  And defense counsel, is it your position that Court Exhibit 1, the plea agreement, contains the entire understanding that your client has entered into with the U.S. Attorney's Office?

MR. LEGON:  Yes, your Honor.

THE COURT:  Were all formal plea offers conveyed to Ms. Zeno?

Linda A. Marino, Official Court Reporter

Proceedings                                     33

MR. LEGON:  Yes, your Honor.

THE COURT:  Did you read and review the plea agreement with your client?

MR. LEGON:  Yes, your Honor.

THE COURT:  And do you believe she understands the entire agreement?

MR. LEGON:  Yes, your Honor.

THE COURT:  Ms. Zeno, is there anything in the plea agreement, Court Exhibit 1, that is not clear or that you need a further explanation about?

THE DEFENDANT:  No.

THE COURT:  Other than the promises contained in the written agreement, Court Exhibit 1, has anyone made any other promises that are causing you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened you to get you to agree to this plea agreement?

THE DEFENDANT:  No.

THE COURT:  Let's go over some parts of the plea agreement in some more detail.

Paragraph one outlines the statutory penalties with regard to wire fraud conspiracy, in violation of federal law, 18 United States Code Section 1349.  So, it says maximum term of imprisonment is 20 years and a minimum term of imprisonment is no time in prison.

Linda A. Marino, Official Court Reporter

Proceedings                                          34

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  You should know there's no parole in the federal system so that if you're sentenced to a term of imprisonment, you should expect that you'll serve all or almost all of that term of imprisonment in custody.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  There's a provision for supervised release.  The maximum supervised release term is three years.  It would follow any term of imprisonment.  If you were to violate a condition of release, you could be sentenced up to two years without credit for prerelease imprisonment or time previously served on postrelease supervision.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If you're placed on supervised release, there could be many restrictions on your liberty, including having to regularly report to a probation officer, travel limitations, and other restrictions.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  The maximum fine that can be imposed is the greater of 250,000 or twice the gross gain or twice the gross loss.

Linda A. Marino, Official Court Reporter

Proceedings                                                35

Do you understand that provision?

THE DEFENDANT:  Yes.

THE COURT:  Restitution is mandatory in an amount to be determined by the Court at sentencing, but it will not be less than $300,000.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And you have to be charged a $100 special assessment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And there is a provision for criminal forfeiture that is described in greater detail in the plea agreement in Paragraphs 6 through 12.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  For defense counsel, it's also possible that conviction for this offense could result in serious immigration consequences if someone is either not a U.S. citizen or a naturalized U.S. citizen.

Is this an issue in this case?

MR. LEGON:  No, it is not, your Honor.

THE COURT:  Do you waive me reviewing the immigration consequences?

MR. LEGON:  Yes, your Honor.

Proceedings                                    36

THE COURT:  So, let's talk about how the sentencing process works.  So, as I said, the district judge is the judge who will make the ultimate decision as to whether to accept your guilty plea and, if she does, with your sentence.

She doesn't have complete discretion to impose a sentence outside of the statutory minimum and maximum sentences set forth in the statute.  And we just went over what those are.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  The sentencing process is a multistep process.  The judge will consider the advisory sentencing guidelines.  They have been issued by the U.S. Sentencing Commission to help a judge determine what's a reasonable sentence in a criminal case.  They are only advisory but they're still an important consideration in the sentencing process and the district judge will take them into account in determining what sentence to give you.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss the sentencing guidelines with your attorney and how they may work in your case?

THE DEFENDANT:  Yes.

THE COURT:  A second step in the sentencing process

Linda A. Marino, Official Court Reporter

Proceedings                                    37

is for the judge to consider whether there are any factors present in your case that would allow the judge to depart from those guidelines.  Sometimes judges depart downwardly from the sentencing guidelines, sometimes they depart upwardly, sometimes the sentence is also within the guideline range.

          Do you understand?

          THE DEFENDANT:  Yes.

          THE COURT:  Then the judge will consider factors that are set forth in a particular federal statute, 18 United States Code Section 3553(a).  The judge will weigh those factors against all of the facts and circumstances of your case.  It may be that that analysis leads the judge to impose a guideline sentence or the judge could decide that a nonguideline sentence is appropriate.

          So, do you understand the sentencing process?

          THE DEFENDANT:  Yes.

          THE COURT:  Until the date of sentencing, you cannot know with certainty what the sentencing guidelines are going to be for your case, you can't know whether the judge will impose a guideline sentence or nonguideline sentence, you can't know whether there will be grounds for the judge to depart from the guidelines.

          Do you understand?

          THE DEFENDANT:  Yes.

          THE COURT:  So, with regard to the process and

Linda A. Marino, Official Court Reporter

Proceedings                                38

preparation for the sentencing hearing, the district judge will receive a presentence report that has been prepared about you by the probation department.  And in that report, the probation department will recommend a sentencing guidelines range.  You and your attorneys will have the right to read the presentence report and challenge anything in it as reported by the probation department.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  The Government will also have the opportunity to read the report and comment.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Despite the fact that you can't know until the day of sentencing what the guidelines will be for your case or whether the judge will give you a guideline sentence or nonguideline sentence, it's still important for you to have an idea of what those sentencing guidelines may be, so I'm going to in a moment ask the Government to state on the record what they believe the sentencing guidelines will be for your case.

You should keep in mind that the Government's estimates could be wrong:  The Government may be missing information upon which the guidelines are to be calculated; information may change between now and the time of

Linda A. Marino, Official Court Reporter

Proceedings                                      39

sentencings.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  So, this is outlined in the second paragraph of the plea agreement, but I'm going to ask the Government to state on the record what its -- what it currently believes the sentencing guidelines are going to be for your case.

MR. NOBLE:  Yes, your Honor.

The Government's estimate of the guidelines is as follows:  There's a base offense level of seven; there's an enhancement of 12 points for causing loss greater than $250,000; there's a two-point enhancement because the offense caused financial hardship to one or more victims; there's a two-point enhancement because the offense involved a misrepresentation regarding a charitable organization; and there's a two-point enhancement for abuse of a position of trust; and a two-point enhancement for using a minor to commit a crime.  With a three-point reduction for acceptance of responsibility, this results in an overall adjusted offense level of 24, carrying a range of imprisonment of 51 to 63 months assuming the Defendant is within criminal history category I.

THE COURT:  Can you just explain the next part?

This is the stipulation and how that works with the

Linda A. Marino, Official Court Reporter

Proceedings                                        40

restitution provision which is the amendment between the plea agreement we were looking at last time and this time.

MR. NOBLE:  Yes, your Honor.

So, the stipulation in paragraph two is to the Defendant's intended loss amount for purposes of the guidelines.  The parties are stipulating that it was at least $150,000.

The Government submits that it will be able to show for sentencing that it was more than $250,000, but this stipulation allows the Defendant to argue at sentencing that her intended loss amount was between $150,000 and $250,000.

In Paragraph 1E, the parties have also agreed on a minimum amount of restitution to be paid to the victim for the overall harm caused by the scheme.

It's our position that that number is over $300,000 and the Defendant has agreed to that minimum amount of restitution.

THE COURT:  Okay.  For defense counsel, did you review the sentencing guidelines calculation that's outlined in the plea agreement?

MR. LEGON:  Yes, I did, your Honor.

THE COURT:  Do you believe it's accurate or is there anything you would like to say?

MR. LEGON:  I believe that it is accurate, your Honor.

Linda A. Marino, Official Court Reporter

Proceedings                                                41

THE COURT:  Did you review this with your client?

MR. LEGON:  Yes, your Honor.

THE COURT:  And do you believe she understands the sentencing guidelines calculation offered by the Government?

MR. LEGON:  Yes, your Honor.

THE COURT:  So Ms. Zeno, do you understand what the Government said with regard to the sentencing guidelines calculation?

THE DEFENDANT:  Yes, I do.

THE COURT:  And you see those last two sentences in paragraph two, which is the first one being that you stipulate to the guidelines calculation except for the loss amount which you stipulate was at least $150,000?

THE DEFENDANT:  Yes.

THE COURT:  Is that correct?

THE DEFENDANT:  Yes.

THE COURT:  And there's a last sentence there which says you reserve the right to argue the loss amount was more than $150,000 but less than $250,000.

Do you understand that provision?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand the relationship between this part of paragraph two and the restitution provision?

THE DEFENDANT:  Yes.

Linda A. Marino, Official Court Reporter

Proceedings                                    42

THE COURT:  Focusing on that just because that's the change between the last version of the plea agreement and the current one.  Okay.

So, you should keep in mind that the district judge is not bound by the plea agreement or what the Government and your attorneys estimate the sentencing guidelines to be.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  The district judge can sentence you according to her interpretation of the sentencing guidelines and the law?

Do you understand.

THE DEFENDANT:  Yes.

THE COURT:  And the district judge will consider the sentencing guidelines as one factor in determining what your sentence will be but she has the authority under the law to decide upon and impose a sentence that is the same as, more severe than, or lesser than the sentencing guidelines.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Additionally, the plea agreement includes an appellate waiver.  In paragraph four that's set forth.

Did you read all of paragraph four?

THE DEFENDANT:  Yes, I did.

Proceedings                                                    43

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes.

THE COURT:  I'm going to particularly read the first sentence of paragraph four, though the whole paragraph is important:  The Defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28 United States Code Section 2255, or any other provision:  A, the conviction; B, the incarceratory portion of the sentence in the event that the Court imposes a term of imprisonment of 71 months or below; C, the duration of supervised release if it is less than or equal to the statutory maximum; or D, any condition of supervised release about which the Defendant has notice prior to sentencing and an opportunity to object.

Do you understand the appellate waiver?

THE DEFENDANT:  Yes.

THE COURT:  Do you agree with it?

THE DEFENDANT:  Yes.

THE COURT:  Is there anything in this plea agreement that's not clear?

THE DEFENDANT:  No.

THE COURT:  And just to review, have you read the entire agreement?

THE DEFENDANT:  Yes.

THE COURT:  Did you review the entire agreement with your attorneys?

Linda A. Marino, Official Court Reporter

Proceedings                                              44

THE DEFENDANT:  Yes.

THE COURT:  Did you have a sufficient opportunity to review the entire plea agreement, Court Exhibit 1, with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  And do you agree with everything that's included in the plea agreement, Court Exhibit 1?

THE DEFENDANT:  Yes.

THE COURT:  When you signed the plea agreement, was it your intent to be bound by the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  So, Ms. Zeno, are you prepared to enter your plea at this time?

THE DEFENDANT:  I am.

THE COURT:  Let me ask your attorney some questions.

Counsel, do you know of any reason why Ms. Zeno should not enter a plea of guilty to Count One of the superseding indictment?

MR. LEGON:  No, I do not, your Honor.

THE COURT:  Are you aware of any viable legal defense to the charges against her?

MR. LEGON:  No, your Honor.

THE COURT:  In your professional opinion, is it in Ms. Zeno's best interest to proceed with the guilty plea to Count One of the superseding indictment?

Linda A. Marino, Official Court Reporter

Proceedings                                    45

MR. LEGON:  Yes, it is, your Honor.

THE COURT:  And in your professional opinion, is it in Ms. Zeno's best interest to enter that guilty plea pursuant to the plea agreement marked as Court Exhibit 1?

MR. LEGON:  Yes, your Honor.

THE COURT:  In addition, your client described many mental and physical challenges and health problems.

Do you have any concern about any of those health problems or the treatments therefore that should give us pause with her proceeding with regard to the guilty plea?

MR. LEGON:  No, your Honor.

THE COURT:  So Ms. Zeno, do you need an opportunity to speak with your attorney before you enter your plea?

THE DEFENDANT:  No.

THE COURT:  With regard to Count One of the superseding indictment which charges you with a violation of federal law, 18 United States Code Section 1349, which is the wire fraud conspiracy count, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  As I said earlier, I have to ask you what it is that you did such that you are, in fact, guilty of this count.  So, if you could, describe what you did in your own words.

I note that you have some papers in front of you.

Linda A. Marino, Official Court Reporter

Proceedings                                    46

It's fine for you to consult with them, but I need you to provide me with this information based on your best recollection of the events, not just reading it.

THE DEFENDANT:  Okay.

I agreed with another person to charge personal expenses to the corporate credit cards of Queens Defenders and submitted claims of reimbursement of those mischaracterized personal expenses as business expenses.  And they were not, in fact, business expenses.  I did it intentionally to obtain money that I knew I was not entitled to.

And in putting forward the expenses, it was done with e-mails and also over the internet.  And my actions took place both on Long Island and in Queens between June of 2024 and January of 2025.

THE COURT:  All right.  And did you intentionally enter into the agreement with the other person?

THE DEFENDANT:  I did.

THE COURT:  Defense counsel, would you like your client to add anything else to the allocution?

MR. LEGON:  No, your Honor.  I think that the allocution is sufficient.

THE COURT:  To the Government, is that a satisfactory allocution?

MR. NOBLE:  It is, your Honor.

THE COURT:  Ms. Zeno, let me ask a few other

Linda A. Marino, Official Court Reporter

Proceedings                                    47

questions.

Are you making this plea of guilty to Count One of the superseding indictment voluntarily and of your own free will?

THE DEFENDANT:  Yes, I am.

THE COURT:  Has anyone threatened or forced you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Other than the plea agreement, Court Exhibit 1 with today's date, has anyone made any promises to you that have caused you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any promises to you as to what sentence you would receive from the district judge if you enter a plea of guilty?

THE DEFENDANT:  No.

THE COURT:  Based on the information provided to me here today by the attorneys and by Ms. Zeno, I believe that Ms. Zeno is acting voluntarily, that she fully understands the charges against her, she understands her rights, and she understands the consequences of her plea.  I believe there's a factual basis for the plea to Count One of the superseding indictment, wire fraud conspiracy, in violation of federal law, 18 United States Code Section 1349.

I, therefore, respectfully recommend to the district

Linda A. Marino, Official Court Reporter

Proceedings                                    48

judge, Judge Kovner, that she accept Ms. Zeno's guilty plea to Count One of the superseding indictment, which is wire fraud conspiracy.

So, let's talk about the logistics here. We're going to return to the Government the original plea agreement, if you could provide a copy of the fully executed plea agreement to defense counsel and then the Court when necessary, that would be helpful.

We have a sentencing date of April 20, 2026, at 2 p.m. That's with Judge Kovner. So, if that date needs to change for any reason, you should reach out Judge Kovner's chambers.

As I mentioned earlier, there will be a report prepared about Ms. Zeno by the probation department.

Defense counsel, do you want us to let probation know that you'd like to be part of that?

MR. LEGON: Yes, absolutely, your Honor, we intend to participate in the interview.

THE COURT: Do you want us to provide both counsels' names, same contact information?

MR. LEGON: Yes, your Honor.

THE COURT: And Ms. Zeno is not in custody.

Is there anything that should change with regard to any of the conditions?

MR. NOBLE: No, your Honor.

Linda A. Marino, Official Court Reporter

Proceedings                                              49

THE COURT:  Defense counsel, anything needs to change?

MR. LEGON:  No, your Honor.

THE COURT:  Anything else that we need to put on the record here today?

MR. LEGON:  Nothing from the defense, your Honor.

MR. NOBLE:  No, thank you.

THE COURT:  All right.  That's everything.  Thank you.  Have a good day.

THE DEFENDANT:  Thank you.

MR. LEGON:  Thank you.

MR. NOBLE:  Thank you, your Honor.

(Matter concluded.)


                    *      *      *      *      *



                    **I N D E X**


                    **E X H I B I T S**


Court Exhibit 1                                          Page 3



                    *      *      *      *      *



Linda A. Marino, Official Court Reporter